J-S63028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LACIONE ROBINSON, | |
| Appellant | No. 2976 EDA 2015 |

Appeal from the Judgment of Sentence August 17, 2015
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0000256-2015

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED NOVEMBER 07, 2016**

Appellant, Lacione Robinson, appeals from the judgment of sentence following his convictions of forgery, terroristic threats, simple assault, resisting arrest, disorderly conduct, and public drunkenness.  We affirm.

The trial court summarized the underlying facts of this case as follows:

> Victoria Cruz was working as a bartender at the Red Barn bar in Allentown in the early morning hours of January 8, 2015.  She saw [A]ppellant and two other men standing in a group at the bar.  These men paid for drinks with $100 bills.  On the last order, [A]ppellant handed Ms. Cruz a $100 bill.  Ms. Cruz did not have enough cash in her register for change so she went to the Red Barn owner, John Reber.  Mr. Reber examined the $100 bill and concluded it was counterfeit.  When Ms. Cruz pointed to [A]ppellant as the person who passed the $100 bill, [A]ppellant immediately ran out of the bar.  The bar manager, Jeffrey Roberts, chased [A]ppellant.

---

[*]  Former Justice specially assigned to the Superior Court.

During the chase, [A]ppellant yelled at Mr. Roberts that he was going to shoot him. Appellant then stopped, turned around and pointed in Roberts's direction. Roberts stopped running because he thought [A]ppellant might have a gun. After he realized that [A]ppellant was only pointing his finger, Roberts continued his pursuit. Appellant next threw an object toward Mr. Roberts. Mr. Roberts saw the object pass over him and he heard a smash of glass behind him. With this, Mr. Roberts discontinued his chase and returned to the Red Barn.

Officer Kyle Pammer of the Allentown Police Department was on duty at this time. He was in plain clothes and driving an unmarked police car at Eighth and Tilghman Streets where Red Barn is located. At 1:22 a.m., Officer Pammer saw a man run out of the Red Barn pursued by another man. Officer Pammer radioed his observations to Officers Ryan Koons and Robert Schlegel who were in uniform and a marked car.

Officers Koons and Schlegel responded and saw [A]ppellant run into an alley named Silk Street. The officers got out of the car and chased [A]ppellant. [Officer] Koons ordered [A]ppellant to show his hands and get on the ground. Appellant tossed an item to the side. Officer Schlegel saw that it was a wad of crumpled cash. Appellant showed Officer Koons his hands but did not get on the ground despite Koons's repeated demands. [Officer] Koons pushed [A]ppellant who fell to his back. Appellant reached with both hands into the center pocket of his sweatshirt. [Officer] Koons threatened to use his Taser if [A]ppellant did not show his hands. Appellant did not comply so Officer Koons applied the Taser. The charge from the Taser flipped [A]ppellant to his stomach. Both officers managed to place [A]ppellant in handcuffs. Appellant smelled of alcohol, had glassy eyes, slurred speech and difficulty in standing. There was a folding knife on the ground where [A]ppellant had been lying. Officer Schlegel collected the wad of bills and folding knife. Michael Boresky, a special agent of the United States Secret Service assigned to the Counterfeit Squad, later examined the wad of bills and five $100 bills that police removed from Red Barn. Boresky concluded that all bills, including the one passed by [A]ppellant, were counterfeit United States currency.

Trial Court Opinion, 11/19/15, at 2-4. Appellant was arrested and charged with the crimes stated above.

On July 1, 2015, a jury found Appellant guilty of forgery, terroristic threats, simple assault, resisting arrest, and disorderly conduct. The trial court found Appellant guilty of the summary offense of public drunkenness. On August 17, 2015, the trial court sentenced Appellant to serve an aggregate term of incarceration of nineteen to thirty-eight months, followed by one year of probation. Appellant filed timely post-sentence motions. On September 3, 2015, the trial court entered an order modifying Appellant's sentence to a term of incarceration of sixteen to thirty-two months, followed by one year of probation. This timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

A. WHETHER OR NOT THE EVIDENCE AS PRESENTED WAS SUFFICIENT AS A MATTER OF LAW TO SUPPORT THE CONVICTION OF THE DEFENDANT FOR ALL THE CHARGES?

B. WAS THE VERDICT AGAINST THE WEIGHT OF ALL THE EVIDENCE IN REGARDS TO THE PROOF OF WHETHER OR NOT THE DEFENDANT WAS GUILTY OF THE CHARGES?

Appellant's Brief at 7.

Appellant first argues that there was insufficient evidence to support his convictions. Appellant's Brief at 13-15. Specifically, Appellant contends that the Commonwealth did not establish that he committed the crimes of forgery or terroristic threats. *Id*. at 14-15.

We analyze arguments challenging the sufficiency of the evidence under the following parameters:

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014) (quoting *Commonwealth v. Emler*, 903 A.2d 1273, 1276-1277 (Pa. Super. 2006)).

With respect to his claim that the Commonwealth failed to establish that he committed the crime of forgery, Appellant offers the following argument:

> In this case, the testimony was clear that [Appellant] did use the single $100 bill to try and pay for his food and drink. However, the testimony is devoid of any direct proof that [Appellant] knew or should have known that the bill was a counterfeit. There was no indication that he had acted unusually or out of the ordinary while in the restaurant/bar or that he in any other way indicated his knowledge that the money might be fake. This lack of evidence regarding his knowledge as to the counterfeit nature of the money brings into question the validity and the sufficiency of the evidence regarding the charge of forgery.

Appellant's Brief at 14.

The relevant statute regarding forgery provides as follows:

**(a) OFFENSE DEFINED. --**A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:

>    (1) alters any writing of another without his authority;

>    (2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or

>    (3) utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2) of this subsection.

18 Pa.C.S. § 4101(a). Here, Appellant was charged and convicted of one count of forgery under subsection (3), relating to uttering a writing which he knows to be forged.

To establish the crime of forgery, the Commonwealth must prove that there was a false writing, that the instrument was capable of deceiving, and that the defendant intended to defraud. *Commonwealth v. Fisher*, 682 A.2d 811, 815 (Pa. Super. 1996) (citing *Commonwealth v. Dietterick*, 631 A.2d 1347, 1352 (Pa. Super. 1993)). "By its plain language, the statute requires only that the act be committed with 'intent to defraud or injure', not that the defendant have succeeded in his endeavor." *Commonwealth v.*

*Shamberger*, 788 A.2d 408, 413 (Pa. Super. 2001) (citing *Commonwealth v. Sheaffer*, 23 A.2d 215, 219 (Pa. Super. 1941)). Intent to defraud is an essential element of forgery. *Commonwealth v. Leber*, 802 A.2d 648, 651 (Pa. Super. 2002) (citing *Dietterick*). In addition, we have long acknowledged that evidence of flight corroborates the inference of guilty knowledge. *Commonwealth v. Carson*, 592 A.2d 1318, 1322 (Pa. Super. 1991).

Our review of the record reflects that on the night of January 8, 2015, Ms. Victoria Cruz was working as a bartender at Red Barn Bar and Grill. N.T., 6/30/15, at 28-31. During her work shift, Ms. Cruz waited on Appellant and he handed her a $100 bill as payment. *Id*. at 32-36. She also waited on other men who paid with $100 bills and who were "hanging out together" with Appellant. *Id*. at 33-35. When Ms. Cruz realized that there was not enough money in her cash register to give Appellant his change, she took the $100 bill to her manager, the owner. *Id*. at 36-37. When the owner took the $100 bill, he inspected it and indicated that it was counterfeit. *Id*. at 37-38. Ms. Cruz then pointed to Appellant as the individual who passed the $100 bill, and Appellant ran out of the establishment. *Id*. at 38. In total, Appellant and his friends gave Ms. Cruz a total of five $100 bills that evening. *Id*. at 41.

In addition, Jeffrey Roberts testified that he was the manager/security guard on duty at Red Barn Bar and Grill on January 8, 2015. N.T., 6/30/15,

at 96-97. Mr. Roberts stated that when Ms. Cruz showed the owner of the bar a $100 bill that had been passed to her, the owner inspected it and concluded that it was not real. *Id*. at 100. Mr. Roberts explained that, when Ms. Cruz pointed to Appellant as the person who gave her the bill, Appellant "bolted" out the door, and Mr. Roberts chased Appellant. *Id*. at 101.

Also, Officer Kyle Pammer of the Allentown Police Department testified that he was working surveillance in an unmarked vehicle at approximately 1:22 a.m. on January 8, 2015, when he witnessed Appellant run out of the Red Barn establishment. N.T., 6/30/15, at 4-7. Officer Pammer also observed Mr. Roberts chasing after Appellant. *Id*. at 8-9. Officer Pammer testified that he radioed other police officers in a nearby marked police car about the incident. *Id*. Officer Pammer explained that when Appellant was apprehended, a large sum of $100 bills was nearby. *Id*. at 11. Officer Pammer stated that inspection of the bills, revealed questionable serial numbers. *Id*. at 12.

The Commonwealth also presented testimony from Officer Ronald Schlegel of the Allentown Police Department. N.T., 6/30/15, at 61. Officer Schlegel testified that he and his partner immediately responded to the radio call from Officer Pammer and observed Appellant running down the street. *Id*. at 65. Officer Schlegel stated that while he was following Appellant, he saw Appellant slow down and discard an item. *Id*. at 67-68. Officer

Schlegel retrieved the item discarded by Appellant, which turned out to be four $100 bills bearing questionable serial numbers. *Id*. at 68-72. Further, Officer Schlegel testified that he collected a total of five $100 bills from the Red Barn establishment, which also had the same serial numbers. *Id*. at 90.

In addition, the Commonwealth presented expert testimony from Agent Michael Boresky of the United States Secret Service Counterfeit Squad. N.T., 6/30/15, at 152. Agent Boresky provided detailed evidence regarding counterfeiting of United States currency and indicated that of the nine $100 bills collected on the night of the incident, seven of the bills had one serial number and two of the bills possessed a second serial number. *Id*. at 159-160. Agent Boresky also explained that the counterfeit $100 bills lacked other security features that authentic currency possesses. *Id*. at 159-165.

Under the totality of the circumstances, this evidence, viewed in the light most favorable to the Commonwealth, is sufficient to sustain Appellant's conviction of forgery. Therefore, Appellant's contrary argument lacks merit.

Next, we address whether the Commonwealth presented sufficient evidence to establish the crime of terroristic threats beyond a reasonable doubt. Appellant offers the following argument in support of his claim:

> The charge of Terroristic Threats comes from the attempt by [Appellant] to stop Mr. Roberts' pursuit of him by threatening to shoot him with his finger. The fact that this "threat" was not a serious threat is indicated by the fact that Mr. Roberts barely

slowed his pursuit of [Appellant] and only stopped after; presumably, a bottle had been thrown at him by [Appellant]. This fact tied in with the evidence that [Appellant] was heavily intoxicated brings into question whether there was any intent to terrorize, as required by statute, in [Appellant's] actions. Any threat does not automatically rise to the level of a terroristic threat unless there is evidence of that specific intent and a careful review of the facts surrounding the utterance of the threat. In this case, [Appellant] believes that the intent necessary to support the charge was not shown in the evidence.

Appellant's Brief at 14-15.

The crime of terroristic threats is set forth at 18 Pa.C.S. § 2706(a) and provides, in relevant part, as follows:

**(a) Offense defined.**—A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

(1) commit any crime of violence with intent to terrorize another; . . . .

18 Pa.C.S. § 2706(a)(1).

The Commonwealth must prove that: (1) the defendant made a threat to commit a crime of violence, and (2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror. *Commonwealth v. Tizer*, 684 A.2d 597, 600 (Pa. Super. 1996). A defendant's intent to terrorize can be inferred from his actions and from the message he communicated. *Commonwealth v. Kelley*, 664 A.2d 123, 128 (Pa. Super. 1995). Therefore, a direct communication of a threat between the perpetrator and the victim is not a requisite element of the crime of terroristic threats. *Id*. at 127. In addition, neither the ability to

carry out the threat, nor a belief by the person threatened that it will be carried out, is an essential element of the crime. ***Commonwealth v. Fenton***, 750 A.2d 863, 865 (Pa. Super. 2000). ***See also In the Interest of J.H.***, 797 A.2d 260, 262 (Pa. Super. 2002) (stating that "[n]either the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense"). Also, the Commonwealth is not required to produce evidence that the person to whom the defendant communicated the threat was actually frightened. ***Kelley***, 664 A.2d at 127. Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security. ***Fenton***, 750 A.2d at 865.

Our review of the certified record reflects that Mr. Roberts testified that he ran after Appellant when Appellant fled the Red Barn Bar and Grill. N.T., 6/30/15, at 101-102. Mr. Roberts offered the following explanation of what happened while he was running down the street after Appellant:

> Well, as I was chasing him, he said he had a gun and was going to shoot me, and when he turned he pulled out his finger. So I stopped briefly, and then when he turned to run again I pursued him a second time, and then he threw something at me.

***Id***. at 102.

The following transpired upon further questioning:

> Q Okay. Let me stop you there. So you said you were running after him, and --
>
> A Correct.

- 10 -

Q --[Appellant] turns?

A Yes.

Q Okay. And what does he do when he turns?

A He said he was going to shoot me.

* * *

Q So he said something to the effect that he was going to shoot [you]?

A Right, yeah.

Q So he turns towards you, pulls his hand out?

A Yes.

Q And what did you do when you see him make that motion?

A I stopped and turned sideways.

Q And why did you do that?

A Because it gives a less object to shoot at, less mass when you turn sideways.

Q And what are you thinking at this moment?

A That he had a gun and he was going to shoot me.

Q Okay. And then you realized it's his hand?

A Right.

*Id*. at 102-103.

Based on the foregoing, we are satisfied that the jury properly determined that the Commonwealth established all the elements of the crime of terroristic threats beyond a reasonable doubt. This testimony,

- 11 -

which was found credible by the jury, with the inferences therefrom, was sufficient to prove beyond a reasonable doubt that Appellant intended to terrorize the victim with his threat to shoot the victim. Therefore, the evidence of Appellant's words and actions was sufficient to sustain Appellant's conviction of terroristic threats.

Appellant next argues that the verdict rendered by the jury was against the weight of the evidence. Appellant's Brief at 15-16. Appellant contends the verdicts were incorrect because there was a lack of proof to establish that he was aware the money in question was counterfeit and that "any threats he made against the security agent from the bar was [sic] done in passing and was not meant as a serious terroristic threat requiring criminal prosecution." *Id*. at 16.

In ***Commonwealth v. Clay***, 64 A.3d 1049 (Pa. 2013), our Supreme Court set forth the following standards to be employed in addressing challenges to the weight of the evidence:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. ***Commonwealth v. Widmer***, 560 Pa. 308, 319, 744 A.2d 745, 751-[7]52 (2000); ***Commonwealth v. Brown***, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. ***Widmer***, 560 A.2d at 319-20, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" ***Id***. at 320, 744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's

- 12 -

verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Brown**, 538 Pa. at 435, 648 A.2d at 1189.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* **Brown**, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. **Commonwealth v. Farquharson**, 467 Pa. 50, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Widmer**, 560 Pa. at 321-[3]22, 744 A.2d at 753 (emphasis added).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable

- 13 -

or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Widmer*, 560 A.2d at 322, 744 A.2d at 753 (quoting *Coker v. S.M. Flickinger Co.*, 533 Pa. 441, 447, 625 A.2d 1181, 1184-[11]85 (1993)).

*Clay*, 64 A.3d at 1054-1055. "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 879-880 (Pa. 2008).

The jury, sitting as the finder of fact, chose to believe the evidence presented by the Commonwealth and to disregard the explanation of events presented by Appellant, as was its right. As the trial court aptly stated, "There was nothing about the jury's verdict which could shock a reasonable person's sense of justice. . . . Accordingly, the challenge to the weight of the evidence fails." Trial Court Opinion, 11/19/15, at 6.

Based upon our review of the record, we are compelled to agree with the trial court. Here, the jury was free to believe all, part, or none of the evidence against Appellant. The jury weighed the evidence and concluded Appellant perpetrated the crimes in question. This determination is not so contrary to the evidence so as to shock one's sense of justice. We decline Appellant's invitation to assume the role of fact-finder and to reweigh the evidence. Accordingly, we conclude that the trial court did not abuse its discretion in refusing to grant relief on Appellant's challenge to the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/7/2016